IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

21ST CENTURY GARAGE LLC,

      Plaintiff,

   v.

HYUNDAI MOTOR COMPANY and
HYUNDAI MOTOR AMERICA,

      Defendants.

CIVIL ACTION

NO. 2:20-cv-00144

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff 21st Century Garage LLC files this Complaint under for Patent Infringement against Defendant Hyundai Motor Company and Hyundai Motor America (collectively, "Defendants" or "Hyundai"), and states as follows:

## THE PARTIES

1.    Plaintiff is a limited liability company organized and existing under the laws of the State of Georgia, having its principal office at 400 W. Peachtree Street NW, Suite 4, Unit #5109, Atlanta, GA 30308.

2.    Defendant Hyundai Motor Company ("Hyundai Korea") is a corporation organized and existing under the laws of Korea, with

a principal office at 12 Heolleung-ro Seocho-gu, Seoul 06797,

Republic of Korea.

3.     Defendant Hyundai Motor America ("Hyundai America")

is a corporation organized and existing under the laws of the State of

California with a principal place of business at 10550 Talbert Ave.,

Fountain Valley, California 92708. Hyundai America may be served

with process through National Registered Agents, Inc., 1999 Bryan

Street, Ste. 900, Dallas, TX 75201-3136.

**JURISDICTION AND VENUE**

4.     This Court has exclusive subject matter jurisdiction over

this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) on the grounds

that this action arises under the Patent Laws of the United States, 35

U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 271,

281, 284, and 285.

5.     This Court has personal jurisdiction over Defendants

because each has minimum contacts with the State of Texas, and has

purposefully availed itself of the privileges of conducting business in

the State of Texas.  For example, on information and belief,

Defendants have sold or offered to sell infringing products in the

State of Texas and this Judicial District, or has manufactured accused vehicles and provided them to intermediaries for distribution throughout the country, including Texas, with knowledge of this distribution.

6.      Venue is proper in this Court as to Hyundai Korea pursuant to 28 U.S.C. § 1391, under which a foreign defendant may be sued in any judicial district in the United States.

7.      Venue is proper in this Court as to Hyundai America pursuant to 28 U.S.C. § 1400(b) on the grounds that it has committed acts of infringement in and has a regular and established place of business in this Judicial District.  For example, upon information and belief, it conducts its business of the exclusive distribution of new automobiles to the consuming public in this District through its authorized dealers in this District, which it holds out to the public as its own (e.g., Hyundai of Longview at 3680 US-259, Longview, TX 75605, and Hyundai of Silsbee at 4100 Hwy 96 Bypass, Silsbee, TX); and (b) conducts its business of the provision of new purchase warranties and service pursuant to those warranties to the consuming

public in this District through its authorized dealerships located in this District.

## FACTUAL BACKGROUND

**U.S. Patent No. 6,332,628**

8.     Plaintiff 21ˢᵗ Century Garage is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,332,628, entitled "Side-Impact Airbag Assembly" ("the '628 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the United States Patent and Trademark Office ("USPTO").

9.     A true and correct copy of the '628 patent is attached hereto as Exhibit A.  The '628 patent is incorporated herein by reference.

10.    The application that became the '628 patent was filed on September 22, 1999, and was assigned U.S. Patent Application No. 09/400,873 ("the '873 Application").

11.    The '873 Application claims priority to German Patent Application 198 43 402, filed September 22, 1998.

12.    The '628 patent issued on December 25, 2001, after a full and fair examination by the USPTO.

13.    The '628 patent is valid and enforceable and directed to eligible subject matter.

14.    The '628 patent discloses and claims inventions relating to a side-impact airbag assembly for a passenger cell of a vehicle. For example, claim 12 of the '628 patent recites:

> 12. Side impact airbag assembly for a passenger cell of a motor vehicle which has a plurality of pillars, a side window disposed between first and second ones of said pillars, and a roof frame extending above the side window, said side impact airbag assembly comprising:
>
> a window bag with a window portion and a pillar portion,
>
> a window bag housing at the roof frame, and
>
> a collision responsive window bag inflator operable to inflate the window bag and thereby deploy the bag from a folded up position in the window bag housing to an inflated passenger protecting position,
>
> wherein the window bag and window bag housing are configured to deploy the window bag in a downward and obliquely horizontal direction with the window portion covering at least a part of the side window and the pillar portion covering at least a part of the first pillar.

15.    The claim elements recited in claim 12 were not well-understood, routine, or conventional when the inventors of the '628 patent filed their patent application.

**U.S. Patent No. 5,978,737**

16.     Plaintiff 21st Century Garage is the owner by assignment of all right, title, and interest in and to United States Patent No. 5,978,737, entitled "Method and Apparatus for Hazard Detection and Distraction Avoidance for a Vehicle" ("the '737 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

17.     A true and correct copy of the '737 patent is attached hereto as Exhibit B.  The '737 patent is incorporated herein by reference.

18.     The application that became the '737 patent was filed on October 16, 1997, and was assigned U.S. Patent Application No. 08/953,863.

19.     The '737 patent issued on November 2, 1999, after a full and fair examination by the USPTO.

20.     The '737 patent is valid and enforceable and directed to eligible subject matter.

21.     The '737 patent discloses and claims inventions relating to the detection of hazardous conditions during operation of a vehicle.

22.    The '737 patent observed that, at the time of filing,
"people are spending increasing amounts of time driving in
automobiles," while at the same time, "technology is becoming
available to allow a driver to perform an ever increasing number of
functions in addition to driving the automobile" (e.g., inserting
compact discs, dialing a phone, and the like). '737 patent at 1:10-19.
The result, the '737 patent explains, "is to make a driver increasingly
less alert to chang[ing] conditions inside and outside the automobile
that constitute hazards." *Id.* at 1:20-25.

23.    The '737 patent further explains that "[e]xisting
automobile hazard detection systems" were "of limited intelligence."
*Id.* at 1:31-33. In particular, the '737 patent discloses, "they detect a
limited group of hazards and provide a limited group of responses, for
example, manipulating a car's braking system in response to
detecting skidding, or activating a collision alarm in response to
detecting an imminent collision." *Id.* at 33-36. Thus, the '737
identified a technological problem with the existing art.

24.     The '737 patent discloses technical solutions to that technical problem. One of these solutions is recited in claim 1 of the '737 patent:

> 1. A system for detecting hazardous conditions during operation of a vehicle, comprising:
>
> a plurality of sensors that monitor a plurality of conditions and transmit condition signals each representing a measure of a condition;
>
> a plurality of rate determination circuits coupled to the sensors that continually receive the condition signals, wherein each rate determination circuit calculates rates of change for the condition, including a baseline rate of change, and outputs a potential hazard value representing a deviation of a rate of change from the baseline rate that exceeds a predetermined threshold value; and
>
> an evaluation circuit that receives the potential hazard value, calculates a new potential hazard value using the potential hazard value and a rate of change for at least one associated condition and determines whether an actual hazard exists by comparing the new potential hazard value with a stored value that corresponds to the condition.

25.     The invention recited in claim 1 addresses technical deficiencies in the state of the art, including the deficiencies identified in the '737 patent's Background of the Invention by, for example, providing a more intelligent hazard detection system that identifies actual hazards based on a monitored condition and an associated condition as recited in claim 1.

26.     The claim elements recited in claim 1 were not well-understood, routine, or conventional when the inventors of the '737 patent filed their patent application.

**U.S. Patent No. 6,526,460**

27.     Plaintiff 21st Century Garage is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,526,460, entitled "Vehicle Communications System" ("the '460 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

28.     A true and correct copy of the '460 patent is attached hereto as Exhibit C.  The '460 patent is incorporated herein by reference.

29.     The application that became the '460 patent was filed on August 30, 1999, and was assigned U.S. Patent Application No. 09/385,364.

30.     The '460 patent issued on February 25, 2003, after a full and fair examination by the USPTO.

31.     The '460 patent is valid and enforceable and directed to eligible subject matter.

32.     The '460 patent discloses and claims inventions relating to a vehicle communications system.

33.     The '460 patent explains that previous vehicle communications systems having a central computer to control a plurality of equipment units for handling data for executing various applications had a disadvantage in that "a modular system structure can only be realized by means of corresponding or different hardware interfaces at the central computer and that, in the case of equipment units with a plurality of executable functions in the hardware interface, a complicated protocol has to be performed by the central computer." '460 patent at 1:44-50.

34.     Another disadvantage of previous systems was "that the individual functions cannot be operated from all operational locations," and that "there is no description of how the system can be extended and of how functional changes can be performed." *Id.* at 1:59-63.

35.     The '460 patent discloses and claims solutions to such technical deficiencies in the art. For example, the '460 patent states that "[t]he object of the invention is to develop a generic

communications system such that it can be extended and adapted to new tasks and applications with comparatively little outlay." *Id.* at 1:64-67. The '460 patent identifies various other advantages provided by the technical solutions disclosed and claimed in the '460 patent. *Id.* at 2:1-4:38.

36.    The claims of the '460 patent incorporate technical solutions to the technical deficiencies in the existing art.

37.    For example, claim 1 of the '460 patent recites:

A vehicle communications system, comprising:

a plurality of equipment units for transmitting, receiving, acquiring and/or processing data for executing applications;

a plurality of hardware interfaces each associated with one of said plurality of equipment units;

a common vehicle data bus, each of the plurality of equipment units being connected to the common vehicle data bus via said associated one of said hardware interfaces; and

wherein the applications are assigned flexibly controllable functions having respective software interfaces, each function being respectively assigned one of said software interfaces for exchanging data with other ones of software interfaces and/or said hardware interfaces, wherein the functions are executed within any desired one of said equipment units.

38.    The invention recited in claim 1 addresses technical deficiencies in the state of the art, including deficiencies identified in

the '460 patent's Background section by, for example, providing that the applications are assigned flexibly controllable functions having respective software interfaces, each function being respectively assigned one of said software interfaces for exchanging data with other ones of software interfaces and/or said hardware interfaces, wherein the functions are executed within any desired one of said equipment units.

39.    The claim elements recited in claim 1 were not well-understood, routine, or conventional when the inventors of the '460 patent filed their patent application.

**U.S. Patent No. 6,526,335**

40.    Plaintiff 21st Century Garage is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,526,335, entitled "Automobile Personal Computer Systems" ("the '335 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

41.    A true and correct copy of the '335 patent is attached hereto as Exhibit D.  The '335 patent is incorporated herein by reference.

42.    The application that became the '335 patent was filed on January 24, 2000, and was assigned U.S. Patent Application No. 09/490,331.

43.    The '335 patent issued on February 25, 2003, after a full and fair examination by the USPTO.

44.    The '335 patent is valid and enforceable and directed to eligible subject matter.

45.    The '335 patent discloses and claims inventions relating to controlling the operation of an automobile using an electronic device having a flat-panel display.

46.    In 2000, the '335 patent recognized the desirability of controlling automobile functions outside the vehicle. This posed various technical problems, however, including how to select automobile functions to control and how to communicate control commands to the automobile.

47.     The '335 patent solves this problem in part by utilizing a flat-panel electronic device to allow a user an opportunity to select a given automobile functions. As has since become ubiquitous, flat-panel display devices provide an effective solution for allowing users to quickly and easily select functions to remotely control. Indeed, many people today even use flat-panel electronic devices to control their televisions rather than traditional remotes. This use of flat-panel technology represents a technical solution to the problem of how to present users with automotive functions to remotely control.

48.     The '335 patent also addressed a technical challenge by utilizing a local wireless link between the flat-panel device and the automobile, thereby requiring the automobile to have the capability to receive commands from the flat-panel device over the local wireless link, a technology that automobiles had not historically offered as of the '335 patent's filing date. Using a local wireless link also helped reduce security dangers (e.g., hacking) common to remote wireless links. The use of the local wireless link for communications between the flat-panel electronic device and the automobile represents a technical solution to a technical problem.

49.     Such technical solutions are reflected, for example, in

claim 1 of the '335 patent.

> 1. A method for controlling the operation of an automobile
> from the interior of a home using an in-home electronic device,
> comprising:
>
> providing a user with an opportunity to select a given
> automobile function to control using the in-home electronic
> device with a flat panel display; and
>
> controlling the given automobile function over a local wireless
> link in response to selection of the given function by the user
> using the in-home electronic device.

50.     The claim elements recited in claim 1 were not well-

understood, routine, or conventional when the inventors of the '335

patent filed their patent application.

51.     The '335 patent also provides other technical solutions.

For example, the dangers of distracted driving are well known.

However, historically, the use of some automotive functions (e.g.,

controlling the radio) required a user to shift his eyes and/or hands

toward controls that were typically located in the center of the dash

area. The '335 patent addresses this (and other problems) in part by

disclosing and claiming a voice-controlled automobile computer. The

use of a voice-controlled automobile personal computer allows the

driver to control various automobile functions without taking his eyes off the road or his hands off the steering wheel. This technological solution increases automotive safety.

52.    This technical solution is reflected in claim 3.

3. The method defined in claim 1, wherein the automobile has a voice-controlled automobile personal computer, the method further comprising controlling the given automobile function by communicating with the automobile personal computer over the local wireless link in response to selection of the given function.

53.    The claim elements recited in claim 3 were not well-understood, routine, or conventional when the inventors of the '335 patent filed their patent application.

## COUNT I – INFRINGEMENT OF THE '628 PATENT

54.    Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

55.    On information and belief, Defendants have made, used, sold, offered for sale, or imported products that incorporate one or more of the inventions claimed in the '628 patent.

56.    For example, on information and belief, Defendants have infringed at least claim 12 of the '628 patent, either literally or under the doctrine of equivalents, in connection with, for example, their

Hyundai Elantra vehicles, as detailed in the preliminary claim chart attached hereto as Exhibit E and incorporated herein by reference.

57.     Defendants' infringing activities have been without authority or license under the '628 patent.

58.     Plaintiff has been damaged by Defendants' infringement of the '628 patent, and Plaintiff is entitled to recover damages for Defendants' infringement, which damages cannot be less than a reasonable royalty.

59.     Prior to filing this action, Plaintiff specifically notified Hyundai America in writing of Hyundai's infringement of the '628 patent.

**COUNT II – INFRINGEMENT OF THE '737 PATENT**

60.     Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

61.     On information and belief, Defendants have made, used, sold, offered for sale, or imported products that incorporate one or more of the inventions claimed in the '737 patent.

62.     For example, on information and belief, Defendants have infringed at least claim 1 of the '737 patent, either literally or under the doctrine of equivalents, in connection with, for example, their

Hyundai Genesis vehicles, as detailed in the preliminary claim chart attached hereto as Exhibit F and incorporated herein by reference.

63.     Defendants' infringing activities have been without authority or license under the '737 patent.

64.     Plaintiff has been damaged by Defendants' infringement of the '737 patent, and Plaintiff is entitled to recover damages for Defendants' infringement, which damages cannot be less than a reasonable royalty.

65.     Prior to filing this action, Plaintiff specifically notified Hyundai America in writing of Hyundai's infringement of the '737 patent.

**COUNT III – INFRINGEMENT OF THE '460 PATENT**

66.     Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

67.     On information and belief, Defendants have made, used, sold, offered for sale, or imported products that incorporate one or more of the inventions claimed in the '460 patent.

68.     For example, on information and belief, Defendants have infringed at least claim 1 of the '460 patent, either literally or under the doctrine of equivalents, in connection with their vehicles

containing the MOST bus, as detailed in the preliminary claim chart attached hereto as Exhibit G and incorporated herein by reference.

69.    Defendants' infringing activities have been without authority or license under the '460 patent.

70.    Plaintiff has been damaged by Defendants' infringement of the '460 patent, and Plaintiff is entitled to recover damages for Defendants' infringement, which damages cannot be less than a reasonable royalty.

71.    Prior to filing this action, Plaintiff specifically notified Hyundai America in writing of Hyundai's infringement of the '460 patent.

**COUNT IV – INFRINGEMENT OF THE '335 PATENT**

72.    Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

73.    On information and belief, Defendants have made, used, sold, offered for sale, or imported products that incorporate one or more of the inventions claimed in the '335 patent.

74.    For example, on information and belief, Defendants have infringed at least claim 1 of the '335 patent, either literally or under

the doctrine of equivalents, in connection with their Hyundai Digital Key, as detailed in the preliminary claim chart attached hereto as Exhibit H and incorporated herein by reference.

75.   Defendants' infringing activities have been without authority or license under the '335 patent.

76.   Plaintiff has been damaged by Defendants' infringement of the '335 patent, and Plaintiff is entitled to recover damages for Defendants' infringement, which damages cannot be less than a reasonable royalty.

77.   Prior to filing this action, Plaintiff specifically notified Hyundai America in writing of Hyundai's infringement of the '335 patent.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court find in its favor and against Defendants, and that the Court grant Plaintiff the following relief:

A.   An adjudication that one or more claims of the '628 patent, the '737 patent, the '460 patent, and the '335 patent have been infringed, either literally and/or under the doctrine of equivalents, by Defendants;

B.   An accounting and an award to Plaintiff of damages adequate to compensate Plaintiff for the Defendants' acts of infringement,

together with pre-judgment and post-judgment interest and costs

pursuant to 35 U.S.C. § 284;

C.    That this Court declare this to be an exceptional case and award

Plaintiff its reasonable attorneys' fees and expenses in accordance

with 35 U.S.C. § 285; and

D.    Any further relief that this Court deems just and proper.

This 11th day of May, 2020.

/s/ *Cortney S. Alexander*
Daniel A. Kent
  dankent@kentrisley.com
  Tel:  (404) 585-4214
  Fax:  (404) 829-2412
Cortney S. Alexander
  cortneyalexander@kentrisley.com
  Tel:  (404) 855-3867
  Fax:  (770) 462-3299
KENT & RISLEY LLC
5755 N Point Pkwy Ste 57
Alpharetta, GA 30022

Attorneys for Plaintiff